Jeffrey R. CONLON, Plaintiff,

v.

CITY OF NORTH KANSAS CITY, MISSOURI, Defendant.

No. 80–0518–CV–W–5.

United States District Court,
W. D. Missouri, W. D.

Dec. 9, 1981.

**986**

Mark W. Bennett, Allen, Babich & Bennett, Des Moines, Iowa, David W. Russell, Kansas City, Mo., for plaintiff.

S. Preston Williams, North Kansas City, Mo., for defendant.

### ORDER

SCOTT O. WRIGHT, District Judge.

This is a civil rights suit for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202. The suit is brought by one individual member of The Holy Spirit Association for the Unification of World Christianity (hereinafter "Unification Church"), and the Unification Church, on behalf of itself and all of its members, to enjoin the enforcement of and to declare unconstitutional Chapter 24 of the North Kansas City Code which prohibits any person from soliciting contributions for any charitable or religious purpose within the city without a permit or a certificate of registration from the city clerk authorizing such solicitation. North Kansas City, Missouri Code §§ 24–5 and 24–22.

The plaintiffs assert that Chapter 24 is unconstitutional because first, it vests discretion in city officials to grant or deny certificates for the exercise of First Amendment rights without narrow, precise, and objective standards to govern such discretion. Second, it lacks due process procedural safeguards respecting denials, revocations and appeals of certificates of registration. Third, it includes unconstitutional restrictions on First Amendment freedoms of association, speech, assembly, and free exercise of religious beliefs. Fourth, it applies unequally to the plaintiffs and, fifth, it creates impermissible violations of the establishment clause of the First Amendment. Defendant argues that the ordinance is constitutional because it provides a non-discretionary framework for the issuance of solicitation permits and certificates to both charitable and religious organizations desiring to solicit funds in the city. Furthermore, defendant argues that any restrictions the ordinance places on First Amendment rights are justified because of the city's inherent interest in protecting its citizens from fraud, harassment, and deceptive practices.

The case has been submitted by the parties to the Court on cross-motions for summary judgment with a stipulation of facts. After reviewing the cited authority and the stipulation of facts, this Court concludes that Chapter 24 of the North Kansas City, Missouri Code is unconstitutional because it impermissibly restricts plaintiffs' First Amendment rights, and the city of North Kansas City, Missouri is enjoined from enforcing this ordinance.

Plaintiff, Jeffrey R. Conlon, is a full-time member of the Unification Church. He presently resides at a church center of the Unification Church in Leawood, Kansas. Plaintiff, Unification Church, is a California non-profit religious corporation holding, *inter alia*, Federal and Missouri tax exemptions as a religious non-profit organization. The Unification Church was founded in 1954 by the Reverend Sun Myung Moon in Seoul, South Korea. The Church teaches fundamental religious beliefs, and emphasizes prayer, evangelical missionary engagements, religious rallies, workshops, retreats, and lectures. In furtherance of its beliefs, the Church's activities include public-place and door-to-door proselytizing of its tenets and principles, and the distribution of religious literature, frequently accompanied by the solicitation of funds from the public for the support of the Church. In the latter connection, plaintiffs seek to engage in door-to-door and public-place proselytizing and solicitation of funds within the City of North Kansas City, Missouri.

Chapter 24 is subdivided into three sections—Article I containing general provisions, Article II containing provisions governing charitable solicitations, and Article III containing provisions governing religious solicitations. Although the Unification Church is a religious group, and only Article III should be applicable, plaintiffs challenge Chapter 24 in its entirety. For purposes of clarity, the provisions applying to religious solicitations and the provisions applying to charitable solicitations will be discussed separately.

### A. *Religious Solicitations.*

Section 24–22 of Chapter 24 of the North Kansas City, Missouri Code prohibits solicitation for religious purposes unless a certificate of registration ·is issued by the city clerk.[1] Anyone soliciting without such a certificate is subject to arrest.[2] On four occasions, members of the Unification Church have been arrested for soliciting without a certificate and have been found guilty in Municipal Court. Subsequent to these arrests, the City Council of North Kansas City denied the application for a solicitation certificate filed by Mary Louise Bliss on behalf of the Unification Church. On September 2, 1980, the City Council of North Kansas City denied the application for a solicitation certificate filed by Jeffrey R. Conlon on behalf of the Unification Church. In both instances, the applications were denied because of incomplete or inadequate information.

Section 24–22 of Chapter 24 requires an applicant for a solicitation certificate to submit an application providing the following information, *inter alia*: the purpose of the solicitation, the amount of funds to be raised, and the intended disposition of those funds; a specific statement showing the need for the contributions; an outline of the method used in conducting the proposed solicitation; the times when the solicitation is to be made; the estimated cost of the solicitation; a financial statement for the past preceding fiscal year of any funds collected for religious purposes by the applicant; a full statement of the character and extent of the religious work being done by the applicant within the city; and any other information as may be submitted to the City Council in order for it to determine the kind and character of the proposed solicitation.[3] In lieu of this information, the ordinance requires a statement of the reasons why such information cannot be furnished.

Neither Mr. Conlon nor Ms. Bliss submitted a financial statement for the preceding year or a statement of reasons why it could not be furnished. The City Council also denied Mr. Conlon's application because some of his answers on the application were either inadequate or incomplete. The application of Ms. Bliss was also denied on the ground that the prior violations of Chapter 24 by other members of the Church raised a doubt that the solicitation would be under the control and supervision of responsible and reliable persons.

▇▇▇ Areas protected by the First Amendment may be regulated "only with narrow specificity," *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). Laws restricting the exercise of First Amendment activities are inherently suspect and bear a heavy presumption against their constitutional validity. *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). It is well settled law that distribution of literature and solicitation of funds to support a religious or charitable organization are well within the protection of the First Amendment. *Village of Schaumburg v. Citizens For A Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976);

---

**1.** *See* Appendix A.

**2.** North Kansas City, Missouri Code § 17–36. *See* Appendix B.

**3.** North Kansas City, Missouri Code § 24–22. Section 24–22 is set out in its entirety in Appendix A.

*Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

Plaintiff's first argument is that the ordinance is unconstitutionally vague because it vests discretion in city officials to grant or deny the applications for solicitation certificates without narrow, precise, and objective standards to govern such discretion. Plaintiff's argument is supported by a long line of Supreme Court decisions invalidating state or local licensing laws. *See Village of Schaumberg v. Citizens For A Better Environment, supra; Hynes v. Mayor of Oradell supra; Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Shuttlesworth v. City of Birmingham, Ala., supra; Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Largent v. Texas,* 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Cantwell v. Connecticut, supra; Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Hague v. Committee For Industrial Organization,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

■ Although it is not clear from these cases what standards would be constitutionally adequate, it is clear that

the standards must be more than mere criteria or guidelines; they must be complete in and of themselves, and leave no factors to be assessed, judgments to be made, or discretion to be exercised by the appropriate licensing official. In other words, *the decision to grant or deny the license application must be virtually a ministerial one.*

*Swearson v. Meyers,* 455 F.Supp. 88, 91 (D.Kan.1978) (emphasis in original).

The main thrust of defendant's argument is that the ordinance is constitutional because it sets forth specific standards which are neither vague nor unreasonable. According to the defendant's interpretation of the ordinance, a religious organization seeking to solicit funds in the city must simply provide the requested information. If it cannot provide the information, it must simply state the reasons why it cannot do

so. Once this is done, a certificate must be issued, and the city officials have no discretion as to granting or denying the certificate. The process is supposed to be ministerial only. The defendant contends that the ordinance is reasonable and necessary to further the City's right and obligation to protect its citizens from fraudulent and disruptive solicitation on private property. This goal is accomplished by making the application form and the disclosed information available to the public for inspection. Those members of the public who desire can learn of the disposition of their donations or contributions to a religious group. Presumably, this enables an informed public to better choose whether it wishes to contribute to a particular religious institution. The defendant emphasizes that there is no discretionary judgment on the part of the licensing authority. Once the application is completed, a certificate must issue regardless of the nature or content of the applicant's responses.

■■ The Court does not question the right of the municipality to protect its citizens from harassment, fraud and deceptive practices. *Cantwell v. Connecticut, supra,* 310 U.S. at 304–05, 60 S.Ct. at 903–904. Nor does the Court dispute a private citizen's right to bar solicitors, hawkers and peddlers from his private property. *Rowan v. United States Post Office Dept.,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).

■ But, a review of the exhibits submitted by the parties with their stipulation of facts reveals the fallacy of defendant's argument that there is no discretionary judgment on the part of the licensing authority in this case. The ordinance, as applied, effectively vests discretion in city officials to grant or deny solicitation certificates. Exhibit 3 is a letter to Ms. Bliss from the deputy city clerk informing her that the City Council had denied her application for a solicitation certificate because she had not provided the required financial statement and because prior violations of Chapter 24 by other members of her organization indicated that the solicitation might

not be under the control and supervision of responsible and reliable persons.[4] The second reason given clearly shows that a denial of an application is not always based solely upon whether the application form is completed. At least in this one case, it was partially based upon a purely judgmental determination of the fitness of the people conducting the solicitation.

Exhibit 7 is a letter to Mr. Conlon from the deputy city clerk informing him that his application for a solicitation certificate was denied because he had not provided the required financial statement and because his responses to several other questions were insufficient. A determination of the sufficiency of the answers is necessarily based upon the formation of an opinion and the exercise of judgment, and thus subject to arbitrary application. *International Society for Krishna Consciousness v. City of Houston*, 482 F.Supp. 852 (S.D.Tex.1979). For example, the following responses were deemed inadequate by the City Council on Mr. Conlon's application:

(4) The total amount of funds to be raised is *unknown.*

(5) The receipts from the solicitations will be used, or disposed of, as follows: *to further the purposes of the Unification Church.*

(6) The need for contributions to be solicited is as follows: *to promote the work of the Church*

. . . .

(9) The method or methods to be used in conducting the solicitations are as follows: *door to door and in public places.*

(10) The proposed dates for the beginning and ending of the solicitations are: Date beginning *from day of approval* 19——, through *each and every day thereafter* 19——.

There are no guidelines or criteria for determining the sufficiency of the information given. The cited examples show that the required specificity is something that people of ordinary intelligence must necessarily guess at. The city officials have unfettered discretion to determine that the same information may be inadequate for one group and adequate for another. In addition, Mr. Conlon's response to number 4 as "unknown" was a stated reason why the information could not be furnished. Nevertheless, this response was listed as a reason for denying the application.

Clearly, the North Kansas City ordinance leaves factors to be assessed and judgments to be made. As applied, the fitness of the people conducting the solicitation is judged by the City Council. If the City Council decides they are unfit, the application is denied. An applicant has no notice of the criteria to be used in assessing the responsibility and reliability of its people in the organization conducting the solicitation. Furthermore, this determination is not permitted under Article III governing religious solicitations, but is provided for under Article II governing charitable solicitations. Obviously, the City Council applied the standards under Article II to the application of Ms. Bliss. The City Council's confusion as to whether the Unification Church is a religious or charitable organization underscores the argument that the ordinance is unconstitutionally vague. The ordinance also fails to provide sufficient notice to an applicant of the quantum of information that will be required before a certificate will issue. An applicant, in good faith, can complete the form to the best of his knowledge and ability and still be denied a certificate on the grounds the information is insufficient. Whereas, another applicant can provide the same information and be granted a certificate within the discretion of the City Council.

On the basis of the foregoing, the Court concludes that Article III, as applied and on its face, is open to arbitrary application and has the potential for becoming a means of

4. No provisions in Article III of Chapter 24 governing religious solicitation permits the City Council to determine whether the solicitation will be under the control and supervision of responsible and reliable persons. This is a finding the City Council must make before issuing a solicitation permit to a *charitable* organization under Section 24–9 of Article II of Chapter 24 governing charitable solicitations.

suppressing a particular point of view. Therefore, Article III is unconstitutionally vague because it does not provide narrow, definite, and objective standards for determining whether the certificates are to be granted or denied, and effectively vests discretion in city officials to grant or deny licenses for the exercise of First Amendment rights. Having ruled in favor of the plaintiffs on the strength of their first argument, the Court finds it unnecessary to consider plaintiffs' other arguments. *See Hynes v. Mayor of Oradell,* 425 U.S. at 620, 96 S.Ct. at 1760.

## B. *Charitable Solicitations*

Plaintiffs also challenge the constitutionality of Article II of Chapter 24 governing charitable solicitations. Defendant argues that this is not in issue here because the plaintiffs represent a religious organization and only Article III is applicable. However, as discussed earlier, it is obvious from Exhibit 3 that the standards under Article II were applied to the application of Ms. Bliss. The question of the constitutionality of the entire ordinance is before this Court.

Sections 24–5 and 24–6 of Article II prohibit solicitation for charitable purposes unless a permit is issued by the city clerk. A cursory examination of Article II shows that it suffers from the same defects as Article III. The ordinance contains numerous general terms, which are nowhere defined, and whose meaning people of ordinary intelligence must necessarily guess at. It vests discretion in city officials to deny or grant the application for solicitation without narrow, definite and objective standards to govern such discretion. Before a permit is issued under Article II, the City Council must find the following:

(a) That all of the statements made in the application are *true.*

(b) That the applicant has a *good character* and *reputation* for *honesty* and *integrity,* or if the applicant is not an individual person, that every member, managing officer or agent of the applicant has a *good character* or *reputation* for honesty and *integrity.*

(c) That the control and supervision of the solicitation will be under *responsible and reliable persons.*

(d) That the applicant has not engaged in any *fraudulent transaction or enterprise.*

(e) That the solicitation will not be a *fraud on the public.*

(f) That the solicitation is *prompted solely* by *a desire to finance the charitable cause described in the application,* and will not be conducted *primarily for private profit.*

(g) That the cost of raising the funds will be reasonable. Any such cost in excess of twenty-five per cent of the amount collected shall be considered to be unreasonable unless *special facts* are presented showing that *peculiar reasons* make a cost higher than twenty-five per cent *reasonable* in the particular case. North Kansas City, Missouri, Code § 24–9. (Emphasis added.)

Furthermore, Section 24–6(*o*) of Article II permits the City Council to determine whether the proposed solicitation is in the interest of, and not inimical to, the public welfare. Such a broad and sweeping determination is highly subjective and open to disagreement among reasonable people. Discretion is vested in a small group of people to determine what is in the "public good," and the First Amendment rights of unpopular groups may be effectively restrained without any of the procedural safeguards enunciated in *Freedman v. State of Maryland,* 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965).[5] Clearly, the ordi-

---

5. In *Freedman,* the Court struck down a motion picture censorship statute because it failed to meet the following safeguards:

(1) pursuant to statute or authoritative judicial construction, the censor must, within a specified brief period, either issue a license or go to court to restrain showing the film;

(2) Any restraint imposed in advance of a final judicial determination must similarly be limited to preservation of the status quo for the shortest possible fixed period; and

(3) a prompt final judicial decision must be assured.

nance requires factors to be assessed, opinions to be formed, and judgments to be made. The dangers present in cases such as *Cantwell v. Connecticut, supra,* and *Hynes v. Mayor of Oradell, supra,* are present here, and the Court must conclude that Article II is unconstitutional on its face.

### C. *Attorneys' Fees and Costs.*

■ The Court finds that the plaintiffs are entitled to attorneys' fees and court costs pursuant to 42 U.S.C. § 1988. The plaintiffs are to submit an affidavit and other proof of attorneys' fees. The defendant will be given the opportunity to respond.

For the foregoing reasons, it is hereby

ORDERED that Chapter 24 of the North Kansas City Code is unconstitutionally vague in violation of the First and Fourteenth Amendments. It is further

ORDERED that plaintiffs' request for a permanent injunction is sustained. It is further

ORDERED that the plaintiffs are to submit proof of their attorneys' fees within fifteen (15) days from the date of this order. The defendant is to respond within five (5) days thereafter. Costs are assessed against the defendant.

APPENDIX A

SOLICITATION

CHAPTER 24.

SOLICITATION.[1]

Article I. In General.

§ 24–1. Definitions.
§ 24–2. Investigation of solicitors generally; publication of findings.

§ 24–3. Solicitations advisory board.
§ 24–4. Misrepresentation generally.

Article II. Charitable Solicitations.
§ 24–5. Permit—Required; exemptions.
§ 24–6. Same — Application — Filing; contents.
§ 24–7. Same—Same—City clerk to be notified of changes in writing.
§ 24–8. Same — Same — Investigation; inspection of records.
§ 24–9. Same—Grounds for issuance.
§ 24–10. Same—Written statement of findings.
§ 24–11. Same—Hearing after denial.
§ 24–12. Same—Fee.
§ 24–13. Same—Form and contents; duration; extension for unnecessary hardship.
§ 24–14. Same—Nontransferable; to be returned to city clerk within two days of expiration date.
§ 24–15. Same—Revocation; hearing; reinstatement.
§ 24–16. Same—Notice of suspension or revocation.
§ 24–17. Agents and solicitors of permit holders to be furnished proper credentials; content of credentials; credentials to be filed with city clerk as a prerequisite to issuance of permit; exception.
§ 24–18. Written receipt to be issued for contributions having a value of one dollar or more; exception.
§ 24–19. Accounting system required.
§ 24–20. Report required from permit holder.
§ 24–21. City employees or officers prohibited from soliciting; exception; penalty.

Article III. Religious Solicitations.
§ 24–22. Certificate of registration— Required; application generally.

[1]. As to uninvited solicitation without permit, see § 17–36 of this Code. As to solicitation of other common carrier passengers by taxicabs, see § 26–10.

§ 24-23. Same—City clerk to be notified of changes in application in writing.
§ 24-24. Same—Issuance; duration; renewal; contents; holders of certificates of registration to furnish credentials to their agents and solicitors; filing of credentials; exception.

ARTICLE I. IN GENERAL.

Sec. 24-1. Definitions.

For the purposes of this chapter, the following words and phrases shall have the meanings respectively ascribed to them by this section:

*Charitable.* Patriotic, philanthropic, social service, welfare, benevolent, educational, civic, cultural or fraternal, either actual or purported.

*Contributions.* Alms, food, clothing, money, subscription, property or donations under the guise of a loan of money or property.

*Promoter.* Any person who, for pecuniary or other compensation, is engaged in the business of or holds himself out to the public as engaged in the business of soliciting contributions for or on behalf of any charitable or religious cause or organization, or who for compensation, agrees to manage the solicitations of any campaign for any such purpose.

*Religious, religion.* Shall not mean and include the word "charitable" as defined by this section, but shall be given their commonly accepted definitions.

*Solicit, solicitation.* The request directly or indirectly of money, credit, property, financial assistance, or other thing of value on the plea or representation that such money, credit, property, financial assistance, or other thing of value will be used for a charitable or religious purpose as those purposes are defined in this section. These words shall also mean and include the following methods of securing money, credit, property, financial assistance or other thing of value on the plea or representation that it will be used for a charitable or religious purpose as defined by this section:

(1) Any oral or written request.

(2) The distribution, mailing or publishing of any handbill or other publication.

(3) The making of any announcement to the press, over the radio, by telephone or telegraph concerning an appeal, assemblage, athletic or sports event, benefit, campaign, contest, dance, drive, entertainment, exhibition, exposition, performance, sale or social gathering, which the public is requested to patronize or to which the public is requested to make a contribution for any charitable or religious purpose connected therewith.

(4) The sale of, offer or attempt to sell, any advertisement, advertising space, book, card, chance, coupon, device, magazine, membership, merchandise, subscription, ticket or other thing in connection with which any appeal is made for any charitable or religious purpose, or where the name of any charitable or religious person is used or referred to in any such appeal as an inducement or reason for making any such sale, or when or where in connection with any such sale, any statement is made that the whole or any part of the proceeds from any such sale will go or be donated to any charitable or religious purpose.

A "solicitation" as defined by this section shall be deemed completed when made, whether or not the person making the same receives any contribution or makes any sale referred to in this section. (Code 1961, § 23-1.)

Sec. 24-2. Investigation of solicitors generally; publication of findings.

The city council is authorized to investigate the affairs of any person soliciting for religious purposes under a certificate issued under section 24-22, and the affairs of any person exempted from the requirement of a permit under section 24-5 or exempted from the requirement of a certificate under section 24-22 and make public its written findings in order that the public may be fully informed as to the affairs of any of such persons. Such persons shall make available to the city council, or to any rep-

resentative designated by the city council in writing for such specific purpose, all books, records or other information reasonably necessary to enable the city council to fully and fairly inform the public of all facts necessary to a full understanding by the public of the work and methods of operation of such persons; provided, that five days before the public release of any findings under this section, the city clerk must first serve a copy of such findings upon the person investigated and at the time of the release of its findings it must release a copy of any written statement the person may file with the city clerk in explanation, denial or confirmation of such findings. (Code 1961, § 22–2.)

Sec. 24–3. Solicitations advisory board.

There is hereby created a solicitations advisory board which shall consist of three citizens of the city appointed by the mayor. The members of this board shall be appointed to serve for a period of four years and any vacancy occurring shall be filled in the same manner as provided for the original appointment. The mayor shall designate one member of this board to serve as chairman. The members of this board shall serve without remuneration and any member thereof may be removed by the mayor. The board is authorized to advise and submit recommendations to the city council regarding the issuance of permits and certificates under this chapter. The city council may refer any application for a permit under this chapter to the board for its recommendations thereon. (Code 1961, § 23–3.)

Sec. 24–4. Misrepresentation generally.

No person shall directly or indirectly solicit contributions for any purpose by misrepresentation of his name, occupation, financial condition, social condition or residence, and no person shall make or perpetrate any other misstatement, deception or fraud in connection with any solicitation of any contribution for any purpose in the city or in any application or report filed under this chapter. (Code 1961, § 23–4.)

## ARTICLE II. CHARITABLE SOLICITATIONS.

Sec. 24–5. Permit—Required; exemptions.

No person shall solicit contributions for any charitable purpose within the city without a permit from the city clerk authorizing such solicitation; provided, that the provisions of this section shall not apply to any established person organized and operated exclusively for religious or charitable purposes and not operated for the pecuniary profit of any person if the solicitations by such established person are conducted among the members thereof by other members or officers thereof, voluntarily and without remuneration for making such solicitations, or if the solicitations are in the form of collections or contributions at the regular assemblies or services of any such established person. (Code 1961, § 23–6.)

Sec. 24–6. Same—Application—Filing; contents.

An application for a permit to solicit as provided by section 24–5 shall be made to the city council upon forms provided by the city. Such application shall be sworn to and filed with the city clerk at least fifteen days prior to the time at which the permit applied for shall become effective; provided, that the city council may for good cause shown allow the filing of an application less than fifteen days prior to the effective date of the permit applied for. The application required by this section shall contain the following information, or in lieu thereof, a detailed statement of the reason why such information cannot be furnished:

(a) The name, address or headquarters of the person applying for the permit.

(b) If applicant is not an individual, the names and addresses of the applicant's principal officers and managers and a copy of the resolution, if any, authorizing such solicitation, certified to as a true and correct copy of the original by the officer having charge of applicant's records.

(c) The purpose for which such solicitation is to be made, the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom.

(d) A specific statement, supported by reasons and, if available, figures showing the need for the contributions to be solicited.

(e) The names and addresses of the persons by whom the receipts of such solicitations shall be disbursed.

(f) The name and address of the person who will be in direct charge of conducting the solicitation and the names of all promoters connected or to be connected with the proposed solicitation.

(g) An outline of the method to be used in conducting the solicitations.

(h) The time when such solicitations shall be made, giving the preferred dates for the beginning and ending of such solicitation;

(i) The estimated cost of the solicitation.

(j) The amount of any wages, fees, commissions, expenses or emoluments to be expended or paid to any person in connection with such solicitations, and the names and addresses of all such persons.

(k) A financial statement for the last preceding fiscal year of any funds collected for charitable purposes by the applicant, such statement giving the amount of money so raised, together with the cost of raising it, and final distribution thereof.

(*l*) A full statement of the character and extent of the charitable work being done by the applicant within the city.

(m) A statement that the actual cost of the solicitation will not exceed twenty-five per cent of the total amount to be raised.

(n) A statement to the effect that if a permit is granted, it will not be used or represented in any way as an endorsement by the city or by any department, employee or officer thereof.

(*o*) Such other information as may be reasonably required by the city council in order for it to determine the kind and character of the proposed solicitation and whether such solicitation is in the interest of, and not inimical to, the public welfare. (Code 1961, § 23-7.)

Sec. 24-7. Same—Same—City clerk to be notified of changes in writing.

If, while any application filed under the preceding section is pending, or during the term of any permit granted thereon, there is any change in fact, policy or method that would alter the information given in the application, the applicant shall notify the city clerk in writing thereof within twenty-four hours after such change. (Code 1961, § 23-8.)

Sec. 24-8. Same—Same—Investigation; inspection of records.

The city council shall examine all applications filed under section 24-6 and shall make, or cause to be made, such further investigation of the application and the applicant as it shall deem necessary in order for it to perform its duties under this chapter. Upon request by the city council, the applicant shall make available for inspection by the city council, or any person designated in writing by the city council as its representative for such purpose, all of the applicant's books, records and papers at any reasonable time before the application is granted, during the time a permit is in effect, or after a permit has expired. (Code 1961, § 23-9.)

Sec. 24-9. Same—Grounds for issuance.

The city clerk shall issue the permit provided for in section 24-5 whenever the city council shall find the following facts to exist:

(a) That all of the statements made in the application are true.

(b) That the applicant has a good character and reputation for honesty and integrity, or if the applicant is not an individual person, that every member, managing officer or agent of the applicant has a good character or reputation for honesty and integrity.

(c) That the control and supervision of the solicitation will be under responsible and reliable persons.

(d) That the applicant has not engaged in any fraudulent transaction or enterprise.

(e) That the solicitation will not be a fraud on the public.

(f) That the solicitation is prompted solely by a desire to finance the charitable cause described in the application, and will not be conducted primarily for private profit.

(g) That the cost of raising the funds will be reasonable. Any such cost in excess of twenty-five per cent of the amount collected shall be considered to be unreasonable unless special facts are presented showing that peculiar reasons make a cost higher than twenty-five per cent reasonable in the particular case. (Code 1961, § 23–10.)

Sec. 24–10. Same—Written statement of findings.

The city clerk shall file in his office for public inspection, and shall serve upon the applicant by registered mail, a written statement of the finding of facts and the decision upon each application. (Code 1961, § 23–11.)

Sec. 24–11. Same—Hearing after denial.

Within five days after receiving notification by registered mail that his application for a permit to solicit under this chapter has been denied, or, after issuance, has been suspended, such person may file a written request for a public hearing to review the action taken before the city council, together with written exceptions to the findings of fact upon which the city council based its decision. Upon the filing of such a request, the city council shall fix a time and place for the hearing and shall notify the applicant thereof. The hearing shall be held within fifteen days after the request is filed. At the hearing the applicant may present evidence in support of his application and exceptions. Any interested person may, in the discretion of the city council, be allowed to participate in the hearing and present evidence in opposition to the application and exceptions. Within ten days after the conclusion of the hearing the city council shall render a written report either granting or denying the application for a permit. In this report the city council shall state the facts upon which its decision is based, and its ruling upon any exceptions filed to his original findings of fact upon the application. This report shall be filed in the city clerk's office for public inspection and a copy shall be served in person or by mail upon the applicant and all parties to the hearing. (Code 1961, § 23–12.)

Sec. 24–12. Same—Fee.

Before a permit required by section 24–5 is issued, there shall be paid to the city clerk the sum of three dollars as a permit fee. (Code 1961, § 23–13.)

Sec. 24–13. Same—Form and contents; duration; extension for unnecessary hardship.

Permits issued under this article shall bear the name and address of the person by whom the solicitation is to be made, the number of the permit, the date issued, the dates within which the permit holder may solicit, and a statement that the permit does not constitute an endorsement by the city or by any of its departments, officers or employees for the purpose or for the person conducting the solicitation. All permits must be signed by the mayor and city clerk. No permit may grant the right to solicit longer than ninety days from its date, but the city council may extend any permit for not more than ninety additional days upon a showing that unnecessary hardship would be created by a failure to extend the original ninety-day period for such additional days. (Code 1961, § 23–14.)

Sec. 24–14. Same—Nontransferable; to be returned to city clerk within two days of expiration date.

Any permit issued under this article shall be nontransferable and shall be returned to the city clerk within two days of its date of expiration, together with all facsimile copies thereof. (Code 1961, § 23–15.)

Sec. 24–15. Same—Revocation; hearing; reinstatement.

Whenever it shall be shown, or whenever the city council has knowledge, that any person to whom a permit has been issued under this article has violated any of the provisions of this chapter, or that any promoter, agent or solicitor of a permit holder has misrepresented the purpose of the solicitation, the city council shall immediately suspend the permit and give the permit

holder written notice by registered, special delivery mail of a hearing to be held within seven days of such suspension to determine whether or not the permit should be revoked. At the hearing the permit holder, and any other interested person, shall have the right to present evidence as to the suspension of the permit, and any other facts which may aid the city council in determining whether this chapter has been violated and whether the purpose of the solicitation has been misrepresented. If, after such hearing, the city council finds that this chapter has been violated, or the purpose of the solicitation has been misrepresented, it shall within five days after the hearing file in the city clerk's office for public inspection and serve upon the permit holder, and all interested persons participating in the hearing, a written statement of the facts upon which it bases such finding and shall immediately revoke the permit. If, after such hearing the city council finds that this chapter has not been violated and the purpose of the solicitation has not been misrepresented, it shall within five days after the hearing give to the permit holder a written statement cancelling the suspension of the permit and stating that no violation or misrepresentation was found to have been committed. (Code 1961, § 23–16.)

Sec. 24–16. Same—Notice of suspension or revocation.

The chief of police shall be notified forthwith by the city clerk of the suspension or revocation of any permit issued under this article. (Code 1961, § 23–17.)

Sec. 24–17. Agents and solicitors of permit holders to be furnished proper credentials; content of credentials; credentials to be filed with city clerk as a prerequisite to issuance of permit; exception.

All persons to whom permits have been issued under this article shall furnish proper credentials to their agents and solicitors for such solicitation. Such credentials shall include the name of the permit holder, the date, a statement describing such holder's charitable activity, a description of the purpose of the solicitation, the signature of the permit holder or of the holder's chief execu-

tive officer, and the name, address, age, sex and signature of the solicitor to whom such credentials are issued and the specific period of time during which such solicitor is authorized to solicit on behalf of the permit holder. A copy of such credentials must be filed with the city clerk at the time the application for a permit is filed and must be approved by him as conforming to the requirements of this section before such permit is issued. No person shall solicit under any permit granted under this article without the credentials required by this section and a facsimile copy of such permit in his possession. The credentials and facsimile copy of the permit must be shown, upon request, to all persons solicited and to any police officer of the city; provided, that in those cases where such issuance of credentials would be impractical in the judgment of the city clerk, then the city clerk may limit or waive entirely the requirements of this section. (Code 1961, § 23–18.)

Sec. 24–18. Written receipt to be issued for contributions having a value of one dollar or more; exception.

Any person receiving money or anything having a value of one dollar or more from any contributor under a solicitation made pursuant to a permit granted under this article shall give to the contributor a written receipt signed by the solicitor showing plainly the name and permit number of the person under whose permit the solicitation is conducted, the date and the amount received; provided, however, that this section shall not apply to any contributions collected by means of a closed box or receptacle. (Code 1961, § 23–19.)

Sec. 24–19. Accounting system required.

No person shall solicit any contributions for any charitable purpose without maintaining a system of accounting whereby all donations to it and all disbursements are entered upon the books or records of such person's treasurer or other financial officer. (Code 1961, § 23–20.)

Sec. 24–20. Report required from permit holder.

It shall be the duty of all persons issued permits under this article to furnish to the

city clerk within thirty days after the solicitation has been completed, a detailed report and financial statement showing the amount raised by the solicitation, the amount expended in collecting such funds, including a detailed report of the wages, fees, commissions and expenses paid to any person in connection with such solicitation, and the disposition of the balance of the funds collected by the solicitation. This report shall be available for public inspection at the city clerk's office at any reasonable time; provided, however, that the city clerk may extend the time for the filing of the report required by this section for an additional period of thirty days upon proof that the filing of the report within the time specified will work unnecessary hardship on the permit holder. The permit holder shall make available to the city clerk, or to any person designated in writing by the city clerk as his representative for such purpose, all books, records and papers whereby the accuracy of the report required by this section may be checked. (Code 1961, § 23–21.)

Sec. 24–21. City employees or officers prohibited from soliciting; exception; penalty.

No employee or officer of the city shall make any charitable solicitations, as defined by section 24–1, for pecuniary or other compensation. No employee or officer of the city shall make any charitable solicitations, as defined by section 24–1, without pecuniary or other compensation, unless he shall have secured the approval of the city council by resolution made in regular meeting. Any employee or officer who violates this section shall be subject to dismissal in addition to the penalties provided in section 1–8. (Code 1961, § 23–22.)

## ARTICLE III. RELIGIOUS SOLICITATIONS.

Sec. 24–22. Certificate of registration—Required; application generally.

No person shall solicit contributions for any religious purpose within the city without a certificate from the city clerk. Application for a certificate shall be made to the city clerk upon forms provided by the city. Such application shall be sworn to, or af-

firmed, and shall contain the following information, or in lieu thereof, a statement of the reason or reasons why such information cannot be furnished:

(a) The name and address or headquarters of the person applying for the permit.

(b) If applicant is not an individual, the names and addresses of the applicant's principal officers and managers and a copy of the resolution, if any, authorizing such solicitation certified to as a true and correct copy of the original by the officer having charge of applicant's records.

(c) The purpose for which such solicitation is to be made, 'the total amount of funds proposed to be raised thereby, and the use or disposition to be made of any receipts therefrom.

(d) A specific statement, supported by reasons and, if available, figures showing the need for the contributions to be solicited.

(e) The name and address of the person by whom the receipts of such solicitations shall be disbursed.

(f) The name and address of the person who will be in direct charge of conducting the solicitation and the names of all promoters connected or to be connected with the proposed solicitation.

(g) An outline of the method to be used in conducting the solicitations.

(h) The time when such solicitations shall be made, giving the preferred dates for the beginning and ending of such solicitation.

(i) The estimated cost of the solicitation.

(j) The amount of any wages, fees, commissions, expenses or emoluments to be expended or paid to any person in connection with such solicitations, and the names and addresses of all such persons.

(k) A financial statement for the past preceding fiscal year of any funds collected for religious purposes by the applicant, such statement giving the amount of money so raised, together with the cost of raising it, and final distribution thereof.

(*l*) A full statement of the character and extent of the religious work being done by the applicant within the city.

(m) A statement to the effect that if a permit is granted, it will not be used or represented in any way as an endorsement by the city or by any department, employee or officer thereof.

(n) Such other information as may be submitted to the city council in order for it to determine the kind and character of the proposed solicitation. (Code 1961, § 23–23.)

Sec. 24–23. Same—City clerk to be notified of changes in application in writing.

If, while any application filed under section 24–22 is pending, or during the term of any certificate granted thereon, there is any change in fact, policy or method that would alter the information given in the application, the applicant shall notify the city clerk in writing thereof within twenty-four hours after such change. (Code 1961, § 23–24.)

Sec. 24–24. Same—Issuance; duration; renewal; contents; holders of certificates of registration to furnish credentials to their agents and solicitors; filing of credentials; exception.

Upon receipt of an application filed under section 24–22, the city clerk shall forthwith issue the applicant a certificate of registration. The certificate shall remain in force and effect for a period of one year after the issuance thereof, and shall be renewed upon the expiration of this period upon the filing of a new application as provided for in section 24–22. Certificates of registration shall bear the name and address of the person by whom the solicitation is to be made, the number of the certificate, the date issued, and a statement that the certificate does not constitute an endorsement by the city or by any of its departments, employees or officers, of the purpose or of the person conducting the solicitation. All persons to whom certificates of registration have been issued shall furnish credentials to their agents and solicitors, such credentials to conform to the requirements specified for credentials in section 24–17, and a copy of such credentials shall be filed with the city clerk at the time of the filing of the application for a certificate. No person shall solicit for any religious cause without having such credentials in his possession, together with a copy of the certificate of registration under which the solicitation is being conducted, and such person shall, upon demand, present these credentials and this copy of the certificate to any person solicited or to any police officer of the city; provided, that the provisions of this section shall not apply to any established person organized and operated exclusively for religious purposes and not operated for the pecuniary profit of any person if the solicitations by such established person are conducted among the members thereof by other members or officers thereof, voluntarily and without remuneration for making such solicitations, or if the solicitations are in the form of collections or contributions at the regular assemblies or services of any such established person. (Code 1961, § 23–25)

## APPENDIX B

Sec. 17–36. Solicitations—Uninvited solicitation without permit.

The practice of going in and upon private residences in the city, by persons not holding a permit pursuant to Chapter 24 and not having been requested or invited to do so by the owner or occupant of such private residence for the purpose of soliciting orders for the sale of goods, wares and merchandise or disposing of or peddling or hawking the same is declared to be a nuisance and unlawful. (Code 1961, § 23–5)

**Cross reference**—Solicitation generally, Ch. 24.