**HOME BUILDING COMPANY, a corporation, Appellant,**

v.

**The CITY OF KANSAS CITY, a Municipal Corporation, Charles B. Wheeler, Edward E. Quick, Joseph R. Serviss, Robert M. Hernandez, Joanne M. Collins, Charles A. Hazley, Joel Pelofsky, Richard Berkley, Leon Brownfield, Bruce R. Watkins, Victor F. Swyden, Arthur E. Asel and J. Harold Hamil, Respondents.**

**No. WD 31206.**

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

Don M. Jackson, R. Scott Smith, Kansas City, for appellant.

Aaron A. Wilson, City Atty., James C. Bowers, Jr., Kathleen A. Hauser, Asst. City Attys., Kansas City, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Appellant Home Building Company alleged in a petition for declaratory judgment that respondent City of Kansas City had obstructed use and development of real estate owned by the Company by unreasonably, arbitrarily and capriciously applying a zoning ordinance. The petition sought a declaration that the ordinance was therefore invalid as to the property in question. The facts agreed by the parties to be applicable to the controversy were stipulated and each moved for summary judgment in reliance on the pleadings and the facts so stipulated. The trial court denied the Company's motion, sustained the motion of the City, entered judgment accordingly and the Company appeals.

On this appeal, the Company contends in substance that the judgment of the trial court lacks any evidentiary foundation because no reason appears for denial of the Company's proposed use of its land. Such being the state of the record, they argue, a zoning decision restricting the use of pri-

vate property without a demonstrated benefit to public health, safety, morals or welfare is, perforce, arbitrary and void.

The Company is the owner of a tract of unimproved land in Clay County comprising some forty–seven acres in the vicinity of North East Forty–Third Street and Russell Road. The land is bordered on the north and south by low–cost single–family residences, on the east by a development of four–story apartments and on the west by a large tract of unimproved property owned by the North Kansas City School District. To the southwest lies an area of high–cost one–family homes and to the southeast there is a mixture of apartments, offices and retail business establishments. A parochial school–church complex is situated to the northeast. The Company's property is zoned District R–1b, single–family dwellings. In conformity with the uses above mentioned, the zoning of adjacent properties ranges from single–family dwellings to multi–storied apartments and retail business districts.

Efforts by the Company to obtain approval for the land development project which is the subject of this action were initiated June 27, 1974 when the Company filed a plan with the City proposing construction of 370 group housing units in various multi–family building configurations. The existing residential zoning of the land, District R–1b, authorizes a mixture of single and multi–family structures in districts otherwise zoned only for single–family use if the development tract is twenty acres or more and if other requirements of the applicable ordinance, Section 65.270, Revised Ordinances of Kansas City, 1956, are observed. Among the conditions prerequisite to approval of such a plan, known in zoning terminology as a community unit project, is the adoption of an appropriate ordinance by the city council. The final plan showing streets, location and size of structures and other details becomes a part of the ordinance and binds the developer to the exact configuration of the completed project.

After initial screening by various departments of the City including transportation, parks and recreation, public works and engineering, and modifications required in this process, the Company's project plan reached the city plan commission. There, the Company was obliged to accept additional modifications which included a reduction in the number of living units by approximately twenty percent. The plan commission thereupon approved the project and on November 6, 1974, an ordinance accepting the revised community unit project was laid before the city council. As is apparently customary in such matters, the council referred the ordinance to its plans and zoning committee for hearing and recommended disposition.

During succeeding months while the ordinance remained in committee, additional changes in the plan, apparently in response to protests from nearby property owners, were suggested and accepted by the Company. Finally, on December 13, 1976, more than two years after first receiving the ordinance, the committee returned it to the council with a recommendation favoring adoption. At a following council meeting on January 7, 1977, however, no vote was taken on the ordinance and, for reasons not revealed in this record, the ordinance was again sent to the plans and zoning committee, evidently in anticipation of additional hearings. After a further hearing and upon reconsideration, the plans and zoning committee again returned the ordinance to the council with a report that it be adopted. Inexplicably, when the council at last voted on the ordinance on February 25, 1977, it failed to pass.

The Company next moved the council to reconsider its action in defeating the ordinance and the motion to reconsider was adopted. In place of again voting on the ordinance, however, it was referred for the third time to the plans and zoning committee for study and thereafter for the third time, the committee considered the ordinance and returned it to the council with the recommendation that it pass.

Earlier, a petition protesting approval of the project had been filed with the City by adjacent property owners. Under the cited

ordinance, if written and acknowledged protest is made by owners of ten percent or more of the land area within 185 feet of the development, approval of the community unit plan requires the affirmative vote of at least three–fourths of the council membership. The subject ordinance was presented for vote on July 7, 1977 and received eight votes in favor and three opposed. Because two council members were absent and not participating, the ordinance failed to pass, lacking the required majority under the voting rule imposed by reason of the protest.

The subject case was, as noted above, decided on summary judgment and on stipulated facts. Significantly, however, both the Company and the City moved for judgment and thus submitted opposing contentions which were not, of necessity, mutually exclusive. This review must therefore consider each facet of the correlative judgments and determine if competent and substantial evidence and the correct application of the law supports both. Before discussing these questions, however, it is necessary to review the constraints on judicial latitude where declaratory judgment actions bring in question legislative or quasi–legislative acts restricting property use through zoning.

■ Municipal legislatures derive their authority to regulate construction and use of improvements on land within their boundaries by statutory delegation from the state. The compelling state interest and, hence, the municipal concern served by zoning regulation of land use is promotion of health, safety, morals or general welfare. Section 89.020, RSMo 1978. Zoning regulation is in derogation of private property rights and must bear a substantial relationship to furtherance of the public interest as the source of validity. *Allen v. Coffel*, 488 S.W.2d 671 (Mo.App.1972). The duty rests initially on the municipal legislature to determine appropriate zoning classifications and such enactments restricting property uses in particular areas bear the presumption of validity. *Lafayette Park Baptist Church v. Board of Adjustment*, 599 S.W.2d 61, 66 (Mo.App.1980).

■ A zoning ordinance may be valid generally, yet invalid in its application to a specific tract. *Flora Realty & Investment Co. v. City of Ladue*, 362 Mo. 1025, 246 S.W.2d 771 (Mo. banc 1952); *Huttig v. City of Richmond Heights*, 372 S.W.2d 833, 838 (Mo.1963). Zoning which restricts property to a use for which it is not adapted is unreasonable and constitutes an invasion of the property rights of the owner. *Herman Glick Realty Co. v. St. Louis County*, 545 S.W.2d 320, 324 (Mo.App.1976). While arbitrary and unreasonable application of zoning ordinances is a subject for judicial inquiry, if the municipal zoning action is fairly debatable, the court cannot substitute its opinion for that of the legislative body. *Desloge v. County of St. Louis*, 431 S.W.2d 126, 131 (Mo.1968). Whether application of a zoning ordinance to a particular tract is reasonable and constitutional or arbitrary and unconstitutional depends on the facts, circumstances and the evidence in each case. *Tealin Co. v. City of Ladue*, 541 S.W.2d 544, 548 (Mo. banc 1976).

The subject case is distinguishable in form if not in substance from the usual zoning controversy by reason of the use authorization sought by the Company and the procedures required and employed to accomplish this end. Some consideration of the community unit plan concept therefore is appropriate.

Approval or disapproval of a community unit plan does not alter the zoning of the property in question because the underlying zoning authorizes community unit projects upon compliance with the ordinance requirements. Unlike exceptions and variations which may ordinarily be granted by administrative action, however, a community unit project requires legislative approval and, hence, partakes of an attribute of rezoning. Some text authorities characterize this type of conditional use as a "floating zone." Thus in Rohan, Zoning and Land Use Controls, Vol. 2, Sec. 13.04(2), 13–51 (1978), distinguishing between a special permit and the community unit plan, it is stated:

"On the other hand, the floating zone needs an amendment to the zoning map in order to permit the proposed land use in the proposed district as permitted by the language of the ordinance. If the floating zone is finally located, it takes precedence over any previous zoning classification, and only those uses authorized in the floating zone may be used by a prospective landowner."

In general, approval of a floating zone application therefore may be equated to some extent with rezoning and is distinguished from use variants and special permits which are processed only by administrative action within limits set down by legislative directive to the administrative body. In other respects, however, the applicable ordinance in this case, cited above, provides for at least a partial delegation of authority to the city plan commission in ascertaining if the proposed community unit plan meets advance requirements for approval. Thus, the ordinance directs initial referral of the plan to the commission for its recommendation and lists twelve enumerated criteria, failing any of which it must be assumed that approval from the commission could not issue.

Among the qualifications to be met by an applicant for a community unit project are conditions of family occupancy, building heights, building setbacks, density, street construction, water service and parking facilities. In addition, the plan commission is directed to consider before recommendation:

" * * * (2) The plan is consistent with the intent and purposes of this chapter to promote the health, safety, morals or general welfare of the city." Sec. 65.270, Revised Ordinances of Kansas City, 1956.

Having thrice approved the community unit plan of the Company in this case, the plan commission must, we assume, have found that the plan met all the specifications for such projects as set out in the ordinance and did not adversely affect the health, safety, morals or general welfare of the public.

The judgment entered in this case was, as initially noted, on summary judgment motions of each of the parties, therefore necessitating an evaluation of the facts and application of the legal principles from the opposing positions and conditions assumed by the City as movant and by the Company as movant. As will hereafter appear, the problem is not one of reflective counterfaces, but is distinguishable in that disposition of one alternative does not require a corresponding result in the other.

Summary judgment is authorized where there is no genuine issue as to a material fact and the moving party is shown to be entitled by unassailable proof to judgment as a matter of law. Rule 74.04(c). On appellate review, the record is considered in the light most favorable to the party against whom summary judgment was rendered. *Scott v. Thornton*, 484 S.W.2d 312 (Mo.1972). While the Company is here entitled to the most favorable view of the evidence because judgment was rendered against it on the City's motion, the Company still must bear the burden of proof on its own motion, because there, the Company is the moving party and must demonstrate its right to judgment by "unassailable proof." *Elliott v. Harris*, 423 S.W.2d 831, 835 (Mo. banc 1968).

Considering first the motion for summary judgment filed by the City and the judgment which was entered on the motion, recourse to the suggestions filed by the City in support of the motion must be utilized to identify the theory advanced, and presumably accepted, as a basis for the judgment favoring the City. This follows because neither the motion nor the judgment entry are explicit as to the facts and legal principles underlying the result. As gleaned from the total content of the record, the City contended below and also asserts here that the council action refusing approval of the community unit plan was a legislative act which is presumptively valid, that the Company was obliged to bear the evidentiary burden of showing that issues of public health, safety, morals and welfare attendant upon the construction described

in the plan were not fairly debatable and, failing such proof, it necessarily follows that application of the zoning ordinance to restrict use of the Company's land to one–family residences was not arbitrary and capricious.

The parties have argued and briefed this question of burden of proof, but have ignored the proposition that the City was an affirmative movant for summary judgment and was therefore required to show entitlement to that judgment by unassailable proof with the evidence of record considered most favorably to the adverse party. While the evidence in this record is meager and is nonexistent as to matters which ordinarily are developed extensively in zoning cases, it is clear, as the Company contends, that every requirement made of it to accept changes advanced by the city authorities was accepted, that inordinate and unexplained delays were utilized to avoid expression of a final decision by the council on the question posed by the ordinance and that no shred of evidence offers any explanation of what general public interest motivated three council members to reject the favorable recommendations of the plan commission and the council's own committee.

In particular, it is significant to observe that the mandate of the ordinance under which the plan commission reviewed the community unit project required that an acceptable plan be consistent with promotion of the health, safety, morals or general welfare of the city. Absent evidence to the contrary, the inference necessarily follows from the repeated approval of the Company's plan by the plan commission and by the council committee that the general public interest vital to imposition of zoning restrictions on private property use was not adversely affected by the project. There simply is no other evidence in the case.

The entries of summary judgment constituted a determination that as a matter of law, no fact issues were present and this court must review the case as any other bench–tried case. *Kerr v. Grand Foundries, Inc.*, 525 S.W.2d 783 (Mo.App.1975). Under Rule 73.01(3) that review is on both the law and the evidence as in suits of an equitable nature. *Brain Trust, Inc. v. City of Raytown*, 523 S.W.2d 156 (Mo.App.1975). The oft–cited rule of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), requires that we reverse the judgment if there is no substantial evidence to support it. Measured by the standards applicable to summary judgment, the award of judgment here to the City on its motion was erroneous.

As the basis for summary judgment under its motion, the City relied exclusively on the favorable presumption attendant upon legislative enactments. The City further assumed that the presumption is sufficiently broad to embrace the conclusion that the facts before the legislature bearing on the question presented a fairly debatable issue and that this assumption is to be made even though the facts considered by the legislature are not disclosed.

Even were the presumption to be as broad as the City contends, on the City's summary judgment motion the Company's evidence must be considered and in its most favorable light with all favorable inferences. That evidence, detailed earlier, shows that the Company complied with every requirement set by ordinance as a condition to approval of its plan, save only the final council action, and includes the inferential finding by the plan commission that the public health, safety, morals and welfare were not adversely affected by the project. In the face of this evidence strongly indicative of arbitrary action by the council, the City offered no evidence and makes no suggestion, beyond reliance on the presumption, that restricting use of the Company property served any public interest whatever.

█ The mere fact that the municipal legislature has acted and is presumed to have acted properly falls far short of unassailable proof required for summary judgment, particularly where the record of the legislative decision conveys no hint of what facts were accepted as a basis for the decision and all facts in this record impel a contrary result. The motion of the City for summary judgment should have been denied.

The same standards of review, but with a different cast, apply to the counterface of this appeal–the denial of judgment to the Company on its summary judgment motion. The parties do not in their briefs directly confront the question which follows the foregoing discussion and disposition of judgment on the City's motion, the prospect that pleadings and stipulated facts may be sufficient to defeat an opponent's motion for summary judgment but fall short of the "unassailable proof" required when the affirmative of the cause is adopted. Rather, it appears to have been assumed that the motions require reciprocal disposition.

The critical facts which bear on all zoning controversies and bring to decision a balancing of public and private interests are the deprivation suffered by the private owner, usually measured in economic terms, when denied the unfettered use of his land, and the welfare of the general public served by restricting construction and use of improvements which depreciate the value or interfere with the reasonable use of the property of others. The parties here joined issue in the case without offering any evidence on these subjects. It is certainly reasonable to assume that the Company has pursued the elusive approval of this substantial project for more than six years because use of the land in this fashion has important economic advantages as contrasted with building single–family homes. So, too, it may be assumed that important issues of the project's impact on nearby properties are alive because more that ten percent of the owners of those properties have formally acted to register their disapproval. It would be fatuous to ignore the presence and impact of these details on the decision reached by the council when the issue finally came to a vote.

On the Company's motion for summary judgment, the court is asked to overturn the decision of the legislative body on the ground that the proposed use to be made of the land in question raised no fairly debatable issues and a denial of the project authorization was arbitrary and capricious. The sole basis in evidence to warrant this result is the processing history of the application as presented to the city plan commission and the council and its committee without any facts showing what considerations of public and private interests were weighed in reaching the results recorded. While the inferences to be extracted from this minimal information are sufficient as against the City's motion for the reasons earlier given the Company cannot prevail on summary judgment because the record simply does not contain the vital details of facts used by the legislative body in its decision making process.

■ On the authorities cited previously, zoning decisions are the province of legislative, not judicial action. It is only where the legislature intrudes on private property rights without a sanctioned public benefit and on facts where the question is not fairly open to more than one result that the legislature may be said to have acted arbitrarily and to have overstepped its governmental authority. To decide the question, the court must have the same information as to private loss and public benefit which was considered by the legislature as only that can determine if a fairly debatable issue existed. The deficiency in this record on this subject, while not dispositive of the ultimate question on the Company's declaratory judgment suit, does preclude summary judgment on behalf of the Company and the trial court was correct in so deciding, even though on other grounds.

Finally, it has been assumed in this opinion that the ordinance necessary to approval of the Company's project was defeated although, as recorded, the council vote favored the ordinance by a substantial majority. Neither party has questioned the sufficiency of the protest to trigger the super majority requirement nor the validity of the statute, Section 89.060, RSMo 1978, and the city ordinance which provides for the filing and consequence of such protests. The opportunity to affect legislative action in zoning matters by this method has been noted in other cases with approval. *State ex rel. Freeze v. City of Cape Girardeau*, 523 S.W.2d 123 (Mo.App.1975); *Dahman v.*

*City of Ballwin*, 483 S.W.2d 605 (Mo.App. 1972). We therefore do not distinguish this case from any in which the same result was accomplished before the council by any numerical count.

For the reasons stated the judgment denying judgment to plaintiff–appellant on its summary judgment motion is affirmed, the judgment granting judgment to defendant–respondent on its summary judgment motion is reversed and the cause is remanded for trial on the merits.

All concur.