**Joe E. WALKER, Jr. d/b/a Last Chance Lounge, Plaintiff,**

v.

**CITY OF KANSAS CITY, MISSOURI, Defendant.**

No. 87–0939–CV–W–8.

United States District Court, W.D. Missouri, W.D.

June 28, 1988.

Errol Copilevitz, John P. Jennings, Jr., Janet Davis Baker, Copilevitz, Bryant, Gray & Jennings, P.C., Kansas City, Mo., for plaintiff.

Dan G. Jackson, III, Asst. City Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

Plaintiff Joe Walker brought this suit against the city of Kansas City, Missouri alleging that his constitutional rights were violated when the city, after a long delay, denied his application for C–X zoning. Walker wants to have go-go dancers at his bar and the city requires C–X zoning for establishments with "exotic dance" facilities. A hearing was held on plaintiff's motion for a preliminary injunction after which the parties submitted post-trial briefs and agreed that the preliminary injunction hearing could be consolidated with the trial on the merits in accordance with Fed.R.Civ.P. 65(a)(2). Plaintiff reserved his right to a subsequent hearing on the issue of damages, however. Thus, this memorandum opinion and order addresses the issues involved in plaintiff's request for an injunction but leaves open the issue of appropriate relief for determination at a later date.

Plaintiff has owned the Last Chance Lounge for approximately fifteen years. The lounge, which is located at the northeast corner of Noland Road and 350 Highway, currently operates as a cocktail lounge. The area surrounding the lounge contains a mixture of commercial and residential establishments. A park, with several baseball diamonds used by people of all ages, is in the vicinity of the lounge. Bruce Fowler, the city planner who worked on the application, testified that the Blue River acts as a natural buffer, separating the park from the Last Chance Lounge.

Plaintiff testified that business had been terrible in the three-to-four-year period preceding 1985. As a result, he informally canvassed his customers[1] to determine if they would like go-go dancers at the bar. Response to this poll was extremely positive and, as a result, Walker decided to apply for the necessary zoning change. Section 39.156 of the Kansas City, Missouri Zoning Ordinance provides that an exotic dance facility[2] must have C–X zoning.

---

[1] Plaintiff testified that the individuals patronizing the lounge were approximately ninety-eight percent white males from working class backgrounds. He stated that some people did visit the lounge in suits and had professional backgrounds. Most of the business was from "regulars," however, and he did not receive much drop-in business from the highway.

[2] Go-go dancing falls under the ordinance's definition of "exotic dancing." The ordinance defines exotic dance facility as "any building, structure or facility which contains, or is used for commercial entertainment, where the patron directly or indirectly is charged a fee to observe specified anatomical areas, provided that the genitals and pubic area of all persons and the areola and nipple of the breasts of all female persons are opaquely covered." "Specified anatomical area" is further defined as "less than completely or opaquely covered (a) Human genitals, pubic region, (b) Buttocks, (c) Female breast area below to a point immediately above the top of the areola." It has been assumed by both parties that the activity which plaintiff desires to have in his lounge would be "exotic dancing" within the ordinance's defini-

C–X zoning is an "overlay" zoning category which exists in connection with some other category of zoning. Under the city's zoning ordinance, C–X zoning may only be established in C–2 (local retail business district), C–3 (intermediate business), and C–4 (central business district) zones. The Last Chance Lounge is located in an area zoned C–2.

In addition to the limitation on the types of zoning C–X may overlay, certain geographical limits exist on its use. C–X zoning may not be established "within 1000 feet of any church, school or area zoned for residential use" nor will "more than two of the uses [3] regulated by this section ... be located within 1000 feet of each other." The ordinance provides, however, that these two limitations may be waived if the person applying for the waiver files a petition with the City Plan Commission "which indicates approval of the proposed regulated use by 51% of the persons residing or owning property within a radius of 1000 feet of the location of the proposed use." Walker filed a legally sufficient waiver petition with the City Plan Commission.

On April 1, 1986 Bruce Fowler, the planner in charge of the project, issued the staff report recommending that the city council approve the rezoning. The report stated that

> [t]he staff feels that the subject site is one of the more suitable locations in the city for a C–X district to be established. It is on a major artery in a relatively isolated area with small businesses and distinct boundaries along the highway and with few residences in the immediate vicinity.

On April 18, 1986 the ordinance recommending the rezoning had its first reading before the council. No opposition to the proposal was presented at this time. On the same date John W. Laney, director of the City Development Department, filed an "Ordinance Fact Sheet" on the proposed zoning. That fact sheet notes that Walker filed the waiver petition required when a proposed use is located within 1000 feet of property zoned for residential uses. The fact sheet contains a section for staff comments where Laney noted that

> in reviewing this request, the staff is aware that the City Council, by establishing the C–X district in the zoning ordinance, determined that C–X uses are appropriate in Kansas City. Therefore, the criteria used to review the suitability of the subject property must not be such that they would rule out every site in Kansas City.

The matter was next brought before the Plans and Zoning Committee on May 7, 1986, when it was put on hold until the May 14, 1986 meeting. At the May 14 meeting the committee voted to put the matter on semi-annual hold. As a result, it was not considered again until January 15, 1987 when the committee recommended that the matter be continued on hold. On January 16, 1987 the city council adopted the committee's recommendation and the matter was again placed on hold. Approximately five months later, at the May 28, 1987 meeting, the committee again recommended to put the matter on hold.

Shortly after the May 28 meeting Jackson County filed a petition of protest against the ordinance pursuant to section 39.355 of the Zoning Ordinance. This section provides that when a legally sufficient petition of protest has been filed about a proposed zoning change, a favorable vote of three-fourths of the members of the city council is required to approve the change. On June 19, 1987, three days after it was filed, the city's law department ruled that the petition of protest was legally sufficient. The City Development Office determined that the petition was legally sufficient on June 26, 1987. On July 8, 1987 the city council's docket committee recommended that the matter again be put on

tion. In his post hearing memorandum, plaintiff admits this fact.

**3.** In addition to exotic dancing, C–X zoning is required for the operation of adult book stores, adult entertainment facilities, adult theatres, bath houses, massage shops, modeling studios, and artists-body painting studios.

indefinite hold and the city council adopted this measure at its meeting on July 9, 1987.

On August 6, 1987 a second reading of the ordinance was scheduled. This reading was prompted by City Council Rule 28 which provides that "[a]ll ordinances and resolutions must be reported by a committee within twenty days after the date of reference therein." If the ordinance is not so reported, any member of the council may call the matter out and it will be placed on the docket at the next meeting for a second reading.

A week later, on August 13, 1987, the city council began to consider the proposed rezoning. While the city council members discussed a number of issues, debate on the proposal centered on whether the council should vote on Walker's application at the August 13 meeting or put the matter on hold for one week. The fact that the city had not yet completed its proposed Land Use Plan for the area where the Last Chance Lounge was located caused some city council members to argue for another hold until the plan was completed. Those advocating a hold believed that a vote should not be taken on the ordinance until the council knew whether it would be in a better legal position if it waited to decide the issue until after the Land Use Plan had been developed. Council members opposing the hold argued that the council was going to defeat the measure in any event and should take a vote at the August 13 meeting rather than continue to postpone consideration of the issue.[4] The city council voted to hold the matter for one week while it sought legal advice about the ramifications of voting on the proposal before the Land Use Plan was approved. At the August 20 meeting the city council decided to put the matter on hold until December 17, 1987, when the Land Use Plan for the area would be finished.

At the December 17 meeting the city council voted against passage of the ordinance and, as a result, Walker is not permitted to have exotic dancing at the Last Chance Lounge. He argues that the numerous delays leading up to the ultimate city council vote constitute a violation of his constitutional right to due process under the fifth and fourteenth amendments of the United States Constitution and that the ordinance as applied to him constitutes a violation of the first amendment of the Constitution. Although the court does not believe that the city council violated Walker's rights under the due process clause, it does conclude that the ordinance, as applied to Mr. Walker, constitutes a prior restraint in violation of the first amendment. The basis for each of these decisions is discussed below.

### I. Due Process Claims

Walker argues that the numerous delays leading up to the December 17, 1987 city council vote and the council's decision to deny his request for rezoning constitute a violation of his due process rights under the fifth and fourteenth amendments. This argument must fail for a number of reasons. First, it is clear that when considering the propriety of zoning ordinances courts must defer to legislative judgment "[i]f the validity of the legislative classification for zoning purposes [is] fairly debatable...." *Village of Belle Terre v. Boraas*, 416 U.S. 1, 4, 94 S.Ct. 1536, 1538, 39 L.Ed.2d 797 (1974) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926)). Specifically, the Supreme Court has noted that it "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United*

---

4. Several council members made comments directly relating to the fact that they did not believe C–X zoning should ever be granted. For example, Councilman Bryant stated that "I'm against this no matter what anybody's plan says, and it really doesn't matter, I'm here to urge each of you to vote against C–X zoning in the Fifth District and against it in Kansas City at all." Transcript (Tr.) of Proceedings at 2. Mr. Sharp stated "if we want to keep it killed, not just make a big show of voting no today, and opening ourselves up for a lawsuit that we could lose, we're going to hold it up till December 17 when we have that Land Use Plan." *Id.* at 4. Mr. Lewellen stated "I have to agree with Councilman Sharp. He's made a very responsible argument for something I believe the majority of [us] want to do and that's to keep sleeze and slime out of our districts and out of our area." *Id.*

*States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). The court noted that "such inquiries into congressional motives or purposes are a hazardous matter" since "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates the scores of others to enact it...." *Id.* at 383–84, 88 S.Ct. at 1682–83.

■ Under this reasoning, plaintiff's argument that the city council violated his due process rights by denying him the C–X zoning and by using the Land Use Plan as a subterfuge for the real reason behind the denial must fail. The mere fact that some councilmen stated that they did not believe that C–X zoning should ever be enacted is not enough to invalidate the statute.

■ Perhaps because he recognizes that the court cannot consider what motivated city council members to vote a certain way, plaintiff primarily argues that the council's denial of his application was arbitrary and capricious. "While arbitrary and unreasonable application of zoning ordinances is a subject for judicial inquiry, if the municipal zoning action is fairly debatable, the court cannot substitute its opinion for that of the legislative body." *Home Building Co. v. City of Kansas City,* 609 S.W.2d 168, 171 (Mo.App.1980). *See also Hope Baptist Church v. City of Bellefontaine Neighbors,* 655 F.Supp. 1216, 1218 (E.D.Mo.1987) ("Regarding real property, substantive due process guarantees the rights of a property owner to be free from arbitrary or irrational zoning actions.").[5]

Walker has not proven that the decision to deny his rezoning application was not fairly debatable. Indeed, the city council engaged in heated debate as to whether the city would be in a better position to consider the permit after the Land Use Plan had been developed for the area. This court cannot find, as plaintiff requests, that the Land Use Plan debate was merely a pretext to cover the arbitrary nature of the proceeding, especially since the city council specifically went into executive session to consider the legal issues involved in voting on the proposed rezoning prior to adoption of the Land Use Plan. Thus, Walker's argument that he was denied due process because the city denied his application for arbitrary reasons cannot stand.

■ In addition to the fact that the decision was "fairly debatable," plaintiff has failed to present a procedural due process claim because he has not shown that he had a legitimate property interest in the zoning change. The Supreme Court has clearly held that procedural due process protections apply only to "interests that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). The court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Legitimate property interests are not created by the Constitution but "are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.* at 577, 92 S.Ct. at 2709. Thus, "a person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke without a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

---

5. While the *Hope Baptist Church* court noted that there may be a substantive, as well as procedural, due process guarantee in zoning decisions, the Eighth Circuit has held that "whether a substantive due process claim may arise from a denial of a zoning permit is an open question in this circuit and need not be decided." *Lemke v. Cass County, Nebraska,* to be reported at 846 F.2d 469, 470–71 (8th Cir.

1987). By finding that the question of substantive due process protections was an open one, the court in *Lemke* implicitly held that its earlier decision in *Littlefield v. City of Afton,* 785 F.2d 596 (8th Cir.1986) was deprived of any precedential value. In *Littlefield,* the court held that "the denial of a building permit under some circumstances may give rise to a substantive due process claim."

Plaintiff has not established that he has a protected property interest that would trigger procedural due process protections under the fifth or fourteenth amendments. The mere fact that an individual believes he should be awarded a particular license [6] and is then denied that license is not enough to trigger procedural due process protections. *See, e.g., Gold Cross Ambulance and Transfer and Standby Service, Inc. v. City of Kansas City*, 705 F.2d 1005, 1016–17 (8th Cir.1983), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985) ("Unilateral expectation of being awarded a license is insufficient to sustain [a] procedural due process claim."). At the hearing Walker testified that he was never told he would receive the C–X zoning classification. He stated only that he complied with the provisions of the zoning ordinance and waited for an answer. This unilateral expectation of a zoning classification is not a protectable property interest for procedural due process purposes.

▮ Walker also argues that the city violated his due process rights by continually delaying the vote on his rezoning application. Mere delay by a city legislative body, however, is not enough to prove that a particular zoning decision was arbitrary and, consequently, a violation of the due process clause. *Home Building Co.*, 609 S.W.2d at 170. Plaintiff in *Home Building* sought a declaratory judgment that the city had arbitrarily applied a zoning ordinance which regulated the location of "community unit projects." [7] Plaintiff had met all of the requirements of the ordinance and had made certain modifications requested by the city plan commission. Plaintiff's application was filed on June 1974 and the city plan commission recommended approval in November 1974. *Id.*

The plan was then sent to committee where it remained for several months.

During this time nearby property owners protested the proposal. *Id.* It was not until December 1976, more than two years after the city plan commission had referred the plan to the committee, that a vote was taken recommending approval. *Id.* The city council did not vote on the proposal until February 1977 when "[i]nexplicably ... it failed to pass." *Id.* While noting that the evidence, including the fact that the plaintiff had complied with all necessary requirements, was "strongly indicative of arbitrary action by the council," the court refused to grant plaintiff's motion for summary judgment. In so holding, the court noted that

"the sole basis in evidence to warrant this result [overturning the decision of the legislative body] is the processing history of the application as presented to the city plan commission and the council and its committee without any facts showing what considerations of public and private interests were weighed in reaching the results recorded.... [T]he company cannot prevail on summary judgment because the record does not contain the vital details of facts used by the legislative body in its decisionmaking process." *Id.* at 174.

Similarly, the court in the present case does not know what details prompted the initial delays in considering Walker's application. The court does know, however, that the last four-month delay was attributable to the council's decision to put the application on hold until the Land Use Plan had been developed. Thus, the court cannot find that the initial delay between June 1985 and August 1987 was arbitrary since it does not know what reasons prompted the delay. Similarly, the city presented evidence [8] that the change was "fairly debatable" and, as a result, this court can find no due process violation.

---

**6.** The court recognizes that plaintiff was applying for rezoning, rather than a particular license or permit. As discussed *infra* at 1250, however, the court believes that the rezoning application is functionally equivalent to an application for a license or permit.

**7.** A community unit project is a mixture of single and multi-family structures.

**8.** *See supra* at 1245–46 for a discussion of whether the city had legal reasons to await development of the Land Use Plan.

## II. *First Amendment Claims*

Although the city did not violate Walker's due process rights in denying his rezoning application, the court believes that Walker has proven that the zoning ordinance, as applied to him, acted as an unconstitutional prior restraint on his first amendment rights. As the discussion below indicates, the fact that the court is construing the city council's decision to deny a certain zoning category, a decision usually left to the discretion of the legislature, does not change the court's first amendment analysis.

The Supreme Court has recognized that "[e]ntertainment, as well as political and ideological speech, is protected" under the first amendment. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). *See also City of Renton v. Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (adult motion pictures protected by first amendment); *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (adult motion pictures protected by first amendment); *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) (musical theatrical production protected by first amendment). Since an entertainment program may not "be prohibited solely because it displays the nude human figure," nude dancing is protected expression under the first amendment. *Schad,* 452 U.S. at 66, 101 S.Ct. at 2181. If nude dancing is entitled to first amendment protections then go-go dancing would also be entitled to protection since the dancers would be partially clothed.

It must be noted, however, that the fact that a particular form of expression falls under the umbrella of first amendment protections does not mean that the state lacks power to regulate the expression. *See, e.g., Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (identifies standards which must be used in regulation of obscene material). This power to regulate protected expression includes a city's right to enact zoning ordinances that limit the location of certain establishments, such as go-go dancing facilities, provided that the ordinance is "rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property." *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182. Thus, the Supreme Court has held that "[t]he mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." *Young,* 427 U.S. at 62, 96 S.Ct. at 2448.

While the Supreme Court has recognized that expression protected by the first amendment may be regulated, the court has also noted that "when a zoning law infringes upon a protected liberty, it must be narrowly drawn...." *Schad,* 452 U.S. at 68, 101 S.Ct. at 2182–83. Indeed, "the presumption of validity that traditionally attends a local government's exercise of its zoning powers carries little, if any, weight where the zoning regulation trenches on rights of expression protected under the First Amendment." *Id.* at 77, 101 S.Ct. at 2187 (Blackmun, J. concurring). *Accord People Tags, Inc. v. Jackson County Legislature,* 636 F.Supp. 1345, 1351 (W.D.Mo. 1986). Therefore, the general prohibitions against prior restraints apply to the C–X zoning ordinance at issue in the present case. In other words, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, indefinite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham, Alabama,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969).

Any statutory scheme that acts as a prior restraint on protected expression bears "a heavy presumption against its constitutional validity." *Southeast Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975) (quoting *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)). Since prior restraints are presumed to be invalid, a system containing a prior restraint must have "procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Id.*

420 U.S. at 559, 95 S.Ct. at 1247. *See also Freedman v. State of Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965).

■■■ Ordinances which give city officials broad discretion must have "narrow, precise and objective standards" to guide the decision if the ordinance regulates conduct falling under the first amendment. *Conlon v. City of North Kansas City*, 530 F.Supp. 985, 988 (W.D.Mo.1981). No such procedural protections exist in the present case. The ordinance which establishes C–X zoning gives total discretion to the city council to approve or deny an application which has met all relevant criteria. As a result, the ordinance is unconstitutional.

In *Little v. City of Greenfield*, 575 F.Supp. 656 (E.D.Wisc.1983), plaintiffs wished to open a nude dancing establishment. The applicable city ordinance required that they obtain a special use permit and an entertainment license to use their land for that purpose. Like the zoning ordinance at issue here, the Greenfield ordinance required that an individual wishing to obtain a special use permit had to submit a petition to the city. The petition was then referred to the City Plan Commission which makes a recommendation for approval, approval with conditions, or disapproval.[9] *Id.* at 660. The City Plan Commission is directed to base its recommendation on three factors: (1) that the use intended is appropriate for the general character of the zoning district; (2) that the proposed use is compatible with adjoining developments; (3) and that the council consider any other matters which may be pertinent to the requested use. *Id.* Final decision making power rests with the common council.

The court held that the Greenfield ordinance was invalid because

> [s]pecial use permits are issued in the final analysis only on Common Council approval. The ordinance specifies no standards whatever to guide the Common Council's decision. The Common Council may act exclusively upon the

findings of the Plan Commission, but it is not required to do so. Moreover, the Common Council is not obliged under the ordinance to consider the three above-mentioned factors governing Plan Commission review.

*Id.* at 663. *See also Zebulon Enterprises v. Dupage County*, 146 Ill.App.3d 515, 100 Ill.Dec. 191, 496 N.E.2d 1256 (1986) (County's zoning ordinance which regulated adult movie theatres was unconstitutional "because it did not include narrow, objective, and definite standards to guide the licensing authority." The court specifically found that the requirement of objective standards applied to legislative, as well as administrative, bodies.).

Defendant argues that the above cases are inapposite because they concern the approval or denial of licenses or special use permits rather than rezoning applications. The court believes that this distinction is one without a difference since the effect of the C–X zoning procedure is that an individual cannot have go-go dancing unless the city council grants his application for a C–X overlay zoning designation. In other words, an individual wishing to have any form of entertainment covered by the C–X zoning on his premises must apply to the city to gain approval. Although this approval is not technically in the form of a license or special use permit, an individual is unable to proceed with his plan unless the approval is given. *See, e.g., Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 964 n. 12, 104 S.Ct. 2839, 2850–51 n. 12, 81 L.Ed.2d 786 (1984) (situation where individual has the power to waive requirements of statute "whenever necessary" is almost identical to a "license" for the dissemination of ideas); *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497, 504 (7th Cir.1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981) (procedure which requires that adult movie theatres acquire a permit while other movie theatres do not need such a permit is a "[s]pecial use mechanism [which] is operationally similar to the licensing procedure").

---

**9.** Unlike the Kansas City zoning ordinance, the Greenfield zoning code requires that the City Plan Commission act on the petition within thirty days of the petition's receipt.

Although a license is not technically required for Mr. Walker to have exotic dancers at the Last Chance Lounge, the C–X overlay zoning operates in the same manner as a license. In this case Walker complied with all of the requirements necessary to obtain a C–X zoning overlay. The City Plan Commission recommended that the city council approve the zoning and specifically noted that the location of the Last Chance Lounge was the type of location where C–X zoning was thought to be appropriate. Despite this recommendation the city council denied Walker's application without any apparent reason.[10] Indeed, several council members specifically noted that they did not believe C–X zoning would ever be appropriate in any location. These statements were made despite the fact that the city council had previously decided, by enacting the ordinance, that C–X zoning should be allowed in certain locations.

Considering these facts, the court concludes that the C–X zoning ordinance operates as a prior restraint upon Mr. Walker's protected first amendment right to have exotic dancers at the Last Chance Lounge. The ordinance is unconstitutional as applied to Mr. Walker because it does not contain any clear, objective standards for the council to use in determining whether to approve a rezoning application. While the court will not spell out in this opinion what these standards should be, it notes that they

> must be more than mere criteria or guidelines; they must be complete in and of themselves, and leave no factors to be assessed, judgments to be made or discretion to be exercised by the appropriate licensing official. In other words, the decision to grant or deny the license application must be virtually a ministerial one.

*Conlan,* 530 F.Supp. at 988 (quoting *Swearson v. Meyers,* 455 F.Supp. 88, 91 (D.Kan.1978)) (emphasis omitted). Since the current zoning ordinance gives more than ministerial discretion to city council members in determining whether to authorize C–X zoning, it is a prior restraint which violates the first amendment of the Constitution.

Nor has the Supreme Court announced any specific standards which would operate to make a prior restraint on first amendment expression constitutional. In a recent opinion the Supreme Court invalidated a Lakewood, Ohio ordinance which required that newspaper companies obtain a license before placing newspaper vending machines on public property. *City of Lakewood v. Plain Dealer Publishing Co.,* —— U.S. ——, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The Lakewood ordinance required that the Mayor, the individual who had discretion to grant or deny the license, had to state the reasons for his decision. *Id.* at ——, 108 S.Ct. at 2150. The Court noted, however, that the ordinance did not require any degree of specificity nor were there any limits to the reasons the Mayor could use as a basis for the denial. As a result, the Court found that "[s]uch a minimal requirement cannot provide the standards necessary to ensure constitutional decision-making, nor will it, of necessity, provide a solid foundation for eventual judicial review." *Id.* The court finds a similar shortcoming with the city's C–X zoning ordinance.

While the court today finds that Walker's first amendment rights have been violated, it will not decide the scope of injunctive relief to be granted until a hearing is held on the issue of damages. At that hearing counsel for both parties should be prepared to present evidence on the proper form and scope of injunctive relief as well as on plaintiff's monetary damages (if any). Accordingly, it is

ORDERED that plaintiff's motion for injunctive relief and damages is granted. The exact scope of this relief shall be determined at a hearing to be held on Monday, July 11, 1988, at 10:00 a.m. in Courtroom No. 1.

---

**10.** Bruce Fowler testified that, to the best of his knowledge, Walker's application for C–X zoning is the only one that has been brought before the city's Plans and Zoning Committee.